V. Health and Human Services, Mr. Poppe. May it please the Court, Mr. Poppe.  This is a case that will offer the opportunity for the Court to provide guidance in the vaccine litigation arena, particularly guidance with respect to when petitioner eliminates other causes, other known causes for his illness, whether that in itself helps satisfy their primary facing case. Can it help overcome a problem of often if it's found lacking? In this case, petitioner, in fact, eliminated all known causes of his illness, approximately 35 different causes. He was in perfect health on the day of his vaccination. He had a full physical on the day of his vaccination, which showed afterwards that he was in perfect health. And there was no claim in this case that he suffered anything else at that time. There's no claim of any alternative potential cause. The second area where this court can help the practitioners in the vaccine court is when is a special master allowed to disregard a opinion on causation of treating physicians? And can a special master use credibility to disregard the testimony of treating physicians? We have two treating physicians who either testified in trial or gave affidavits as to causation. They gave a good basis for it, and they gave cause and effect, which is what they should have been doing. To hold the treating physicians to the standard of you have to satisfy all three prongs, I believe, is incorrect and improper. I believe it violates, in fact, the decisions of this court in Capozano, Andreu, and Olson. Furthermore, attempting to look at a record and try to find other treating physicians that didn't testify and what they may have said or may not have said is not proper when treating physicians do testify. And particularly in this case, the evidence is going to show that the three treating physicians who did not testify, who were not brought up at trial, but later were brought up by the special master, basically said they could not tell whether or not the vaccine caused the injury. Those are the three treating physicians. That is found in the record. Can I just ask you this? Of course. I'm sure you know we have a really hard standard of review here for you, and this case, at least the way the court of federal claims looked at it and the way the special master looked at it, rested on this very narrow question of whether there was a sufficient timing between the vaccine and, I think, just the transverse myelitis. And it found, as a matter of fact, that there was no theory to establish that TM could occur within one day of the vaccination, and I believe that's what the court of federal claims decided to affirm on. What is the error in looking at it that way? The error is twofold. One, you're allowing the special master to diagnose the disease and illness, and that's improper. I don't understand. I know you've argued that. I don't understand that. That makes no sense to me, because here the diagnosis is an important part of the determination of causation, and whether Mr. Contreras had TM or GBS is pretty important in terms of whether the form three of ALPIN be satisfied. I don't understand that, because there's significant evidence that TM would manifest itself within a period of one day, whereas there's conflicting evidence as to whether GBS would manifest within one day. The reason is this. TM and GBS in 20% of the cases are coexisting. Both TM and GBS involve the same symptoms, paralysis of the onslaught. What you're saying is that it's improper to insist on a single diagnosis of only one thing. That may be true, but it's certainly important here, is it not, to determine whether GBS was part of the diagnosis, because if it was, the evidence that TM couldn't occur within one day is undermined. Absolutely correct, and GBS was part of the diagnosis, and it was part of the diagnosis by the neurologist, Dr. Lake, which the respondent wants to, and the special master paid great deference to, and as far as Dr. Wagner also. And the way they did it is twofold, but both of them did the same Babinski test, the toes were pointed downward, and when that happens, that means it's GBS and Dr. Lake. They first believed it was GBS, and since they both can be treated together, it didn't make a difference later on that there was an MRI which also showed transverse myelitis. They treated the GBS with IVIG, which is what they should have been treating GBS for, that's also used for transverse myelitis. Both these diseases, although one is a central nervous system, one is peripheral nervous system, are diseases that often are not treated together. At least 20% of the time, according to testimony, occur together, and a lot of times the GBS gets pushed down because of the MRI result. But here, Dr. Wagner clearly, the treating physician, said it's a typical GBS. You're getting into the details a little bit, I'm still trying to figure out what, no, it's helpful to hear the details, but I'm still trying to figure out what you think the legal error here is in isolating the TM. Is it that the TM may be detected at an earlier stage, so the fact that it didn't occur within one day doesn't mean that the vaccine didn't cause the GBS, and therefore the special master should have looked at both to determine whether the vaccine caused something? It's unclear to me. Again, going back to what I think is the sole basis that the court of federal claims affirmed the special master's decision here, which is that he relied on the fact that it was TM and that TM couldn't occur within one day. That, absent the rest of the context of this case, seems to be not necessarily arbitrary and capricious, so I'm trying to understand why that is legal error or arbitrary and capricious here. Okay, I believe it's legal error because Guillain-Barré syndrome, GBS, can occur in one day, and there was a great amount of literature that shows that it could occur in one day, and there were good scientific discussions on how it could occur in one day, enough to meet the often prompt. With respect to GBS. With respect to GBS, and since that was his first diagnosis and the diagnosis for the first 48 hours or so, and what he was treated for, and since we have undisputed record here that you can have both diseases or illnesses occurring together, there would be no reason to believe that he didn't have GBS. Well, the only contrary testimony was by Sladke, right? Well, no, Sladke even said it was 2.5%, and I would say... But the answer to my question is yes, the only testimony that he didn't have GBS was from Sladke. No, that's... well, yes, as far as the experts. Dr. Garrett said he had transversal myelitis. Well, that doesn't mean he didn't have GBS. But you're exactly right, exactly, Donna, that's correct. I believe that when there is an arbitrary credibility issue that's brought up as far as treating physicians, and that is very important for this court to look at. I believe the due process issue which occurred here also affects that last prong, because Dr. Steinman apparently was ranked lower because of his testimony in other cases. And this is an extremely important issue, because in the vaccine court, testimony in other cases can't be brought in. They weren't brought in at trial. It was only two and a half years later that the special master apparently tried to look at transcripts or looked at reports to say, well, Dr. Steinman may have given inconsistent statements in other courts. That is just totally improper, and I believe that that's an important issue. Finally, I think that the special master ignored substantial circumstantial evidence, case reports, which he should have given great credence to. He didn't, and I think that, again, is ample opportunity to reverse this matter. In the end, since no alternative cause was shown, the respondent is left with saying this is idiopathic and saying we didn't provide a prima facie case. And I think Walther says that we can eliminate causes and therefore make our prima facie case. Any other questions at this time, Your Honors? Mr. Johnson? Good morning, Your Honors. May it please the Court, despite a voluminous record... Your brief seems not to address the arguments that are made by the other side. So I hope in the questioning today we can get to some of that. Is it not the case that there was, put aside Dr. Slanky, that there was overwhelming evidence that Mr. Contreras suffered from GBS? Respectfully, no, Your Honor. The evidence actually was in conflict. What's the conflicting evidence? Well, Petitioner's own experts, Dr. Garrett, who offered an affidavit on behalf of Petitioner, he offered the diagnosis of transverse myelitis. He did not include in his affidavit that Petitioner suffered from GBS. Well, that doesn't mean that he's saying he didn't suffer from GBS. There was certainly testimony, was there not, that he was suffering from both TM and GBS? Dr. Steinman, Petitioner's expert, did testify that Petitioner suffered from both TM and GBS. So was there anybody who testified that he didn't suffer from GBS? No, put aside Dr. Slanky. And putting aside Dr. Slanky and looking at the entire medical records for this case, the facts as they occurred were that Petitioner started experiencing symptoms the morning after his vaccination. No, but the question is, was there any testimony that he was not suffering from GBS, aside from Slanky? Well, Your Honor, the Special Master was obligated to... No, answer my question. Was there any testimony, aside from Slanky, that he was not suffering from GBS? There was no testimony that he was not suffering from GBS. But there were other physicians who were treating Mr. Contreras during his extended hospitalization for his illness. And Dr. Lake, who was the treating neurologist, who was called in to evaluate Mr. Contreras... Did any of them, I assume you're going to say they diagnosed him with TM instead of GBS, but did any of them rule out GBS? You're asking us to make an inference that they ruled out GBS because they diagnosed him with something else. Well, actually, Your Honor, the Special Master drew the inference, and as the fact finder, that's his role. He was presented with conflicting evidence in this case about what the diagnosis was. Yes, but he relied at least in part on Slanky's testimony, which the Court of Federal Claims drew out altogether. Well, if you look back at the transcript, Dr. Wagner, who was the emergency room physician who treated Petitioner, he testified that he did perform this Babensky reflex test, and that that seemed to be evidence of GBS. But then he also testified that Petitioner was also experiencing the symptom of priapism, and that that suggested to him spinal cord involvement. He also testified that even though there was an MRI that was performed on the day following the vaccinations, when Petitioner first began to experience symptoms, and that MRI didn't show any lesions in the spinal cord, that early MRIs in transverse myelitis might not necessarily show a lesion. Where is the Special Master finding that he didn't suffer from GBS? The Special Master actually said that it wasn't necessarily all that important what the diagnosis was. Right. So I'm asking, where did he make a finding that he wasn't suffering from GBS? Well, in his first decision, he said that based on his evaluation of the record as a whole, he believed that the sole diagnosis was transverse myelitis. But that finding wasn't necessarily important to his causation analysis, because Dr. Slag... So is the answer that he didn't make a finding in his most recent decision that Mr. Contreras was not suffering from GBS? Well, he was criticized... Did he make such a finding? I believe he found that consistent with his first opinion, that the sole diagnosis, the weight of the evidence in this case... Where did he say in the most recent decision that he was not suffering from GBS? Yes. Your Honor, rather than taking the time to find that, I think the answer to your question is that... And I believe where the questioning is going is that the idea that GBS can occur within 24 hours after vaccination. And that is not what the evidence in the record is. Dr. Steinman testified directly that regardless of whether the condition was transverse myelitis or GBS, his opinion would not change. Dr. Witten testified that regardless of whether the condition was GBS or TM... Well, his opinion would not change that it satisfied prong three of Alvin. What does that have to do with it? I mean, if he's wrong about TM being manifested within a day, he could be right about GBS. Because, Your Honor, the dispositive issue in this case is the third prong of Alvin, the timing issue. Yes, but if there was error in focusing only on TM without considering the effects of GBS, then it's arbitrary and capricious if it focused only on whether TM could occur within one day. I mean, it seems that the record suggests that GBS might occur within one day, whereas it seems possible that TM probably doesn't. Well, that wasn't the case that Petitioner presented below. The case that they presented below that was, regardless of, through Dr. Steinman, was that regardless of whether... Yeah, but it doesn't really matter if they were arguing that TM could occur within one day, as long as they're arguing that both could occur within one day. And where did the special master rule out the vaccines causing GBS within one day? Well, Dr. Steinman's testimony did not distinguish between transverse myelitis and GBS. He testified that both could occur within one day. Dr. Witten rebutted that testimony by explaining the immunological process of molecular mimicry, the nine-step process that he laid out in his testimony. And that, again, that testimony was not specific to transverse myelitis. It was specific to a vaccination going through the immunological process of molecular mimicry to lead to a demyelinating disease, whether in the peripheral or central nervous system. Your problem is that the special master, when he rejected the notion that this could happen within one day, at page 57 of the record, relies on three points here. This is the, they're talking about the tubercular reaction and how that's similar to what happened here, and that the tubercular reaction could happen within one day. And he gives three reasons. The third and most important one, he says, is that the tubercular reaction occurs in an area not protected by the blood-brain barrier. Not a relevant consideration when you're talking about GBS, correct? Not to GBS, but there is no dispute, as the special master pointed out, that Petitioner did suffer from transverse myelitis. And that he did experience symptoms of transverse myelitis. So what? The question is, if he suffered from GBS, let's assume for the moment that it was established in the record that he suffered from GBS, maybe in addition to transverse myelitis. If he suffered from GBS, the blood-brain barrier problem, which argues against it happening within one day, is inapplicable, right? It is inapplicable if it is only GBS. But here we are not talking about only GBS. Well, you seem to be arguing that if they made both arguments and they were wrong about one, they necessarily lose on the other one. I don't understand the logic of that. Because, and as the special master pointed out in his decision, if the theory here is that the vaccine caused both GBS and transverse myelitis, the petitioner has to offer a theory that explains both. And here there is no dispute that the petitioner, because the petitioner experienced... Well, the petitioner then has to offer a theory that explains how... But the answer is yes, right? No, respectfully no, Your Honor. And one of them was caused by the vaccine. He is entitled to recover. Is that not the case? Respectfully no, Your Honor. The petitioner would have to offer a theory that would explain how a hepatitis vaccine administered to Mr. Contreras caused only GBS, 24 hours following administration, but was totally unrelated to the concurrent transverse myelitis that was also occurring as proven by the MRI that was done and showed the lesion on the spinal cord. So there is no dispute in this case that the petitioner suffered from transverse myelitis. And what I think you are asking the special master to do is to... We are asking the special master to address GBS, which he failed to do. Well, he did. Respectfully, Your Honor, he did address GBS. He found that the weight of the evidence, the medical evidence and the record, did not support a diagnosis of GBS. That once the MRI was done two days following... We are relying on Dr. Slabke. There isn't any... We just went through this with you. There isn't any testimony that he was not suffering from GBS. Let me ask you this. Let's say we even agree with you about TM and that the special master is right, that he suffered from TM, that the vaccine couldn't have caused the TM. Couldn't he still recover if there was a diagnosis of GBS and a showing that it occurred within one day of the vaccine, which some people have said can be a sufficient timing? If that were the theory that Petitioner had offered, then... So your argument seems to be because his theory says this vaccine caused both, he can only win if he proves both. What we are arguing is that it is the Petitioner's burden to present a medical theory and a logical sequence of cause and effect. His medical theory at heart is vaccine, GBS. Well, again, that is part of his theory, but the theory actually was both transverse myelitis and GBS. And again, the evidence below is that neither condition could occur within 24 hours. What if he said, I have either GBS or TM that was caused by the vaccine? Then the special master would have needed to evaluate that case. You seem to be splitting hairs then, because that seems to suggest that that's exactly what he was doing. I mean, the record is not precisely clear over what he suffered. Exactly, and as the fact finder, it was directly within the purview of the special master to look at the evidence in the record and to make a determination... That he suffered from one but not the other. But the problem you get into there, and I don't want to go over this again, is that the only evidence that he didn't suffer from GBS is the discredited SLACI testimony. Respectfully, Your Honor, no. The treating physicians, after the MRI was performed on June 18th, following the vaccinations on June 16th, that showed the lesion on the spinal cord, Dr. Lake, the treating neurologist at that point, changed her diagnosis from atypical GBS to transverse myelitis. From that point forward, throughout the hospitalization, his diagnosis is consistently noted as transverse myelitis. GBS falls out of the diagnosis at that point. So the special master is not relying just on Dr. SLACI, but looking at the actual doctors who were treating Mr. Contreras during his illness, the doctors who were most concerned with what he had because they were responsible for his treatment and care. But you can't point us to a finding by the special master that he wasn't suffering from GBS. I asked you, you can't point to such a finding. In his very first decision, he says... In the most recent decision where he makes findings setting aside Dr. SLACI's testimony, show me where he said he's not suffering from GBS. On page... The finding that he made was that... That a vaccination caused both. That is not a finding that he didn't suffer from GBS. But the finding is that there was no dispute that he suffered from transverse myelitis. And again, I think it would... The petitioner didn't offer any evidence to explain how the hepatitis vaccine could only cause GBS and not also the transverse myelitis, assuming that Mr. Contreras was suffering from both. And I think what you're asking the special master to do is to essentially assume theories on behalf of petitioner that were not offered into evidence by petitioner's own expert. And the special master has to evaluate the record before him. He has to evaluate the evidence before him. He's written over 170 pages single spaced on this case. I don't think there can be any argument that he's not carefully considered the evidence in this case. And he simply wasn't... He found the most persuasive the testimony of the government's expert immunologist. I mean the court of federal claims judge found on the final opinion that he almost completely disregarded her instructions on remand about looking at Sladky, making specific findings and the like. And only at the end gave up and affirmed based on this very narrow question. Because that third remand opinion still went through and said why even though Sladky may have been discredited for some reasons, he wasn't discredited for others. Almost in direct contravention of what the court of federal claims said the time before. I mean the relevant portion of this opinion that you're arguing for affirmance on is a very, very small portion of the third opinion. And all it talks about is TM not being caused by a vaccine within one day. And I see that I'm over my time if I may briefly respond. You should respond. Your Honor, I think it is significant that Judge Bush for all of the problems that she had with the way the special master handled this case at the end of the day could find no error in his evaluation and reliance on the testimony of the government's expert Dr. Witten on the amount of time it would take a vaccine to cause through molecular mimicry any demyelinating disease. I have one more question for you. Let's assume hypothetically that we were to decide that this case had to be remanded. Is it within our authority to order that the case be transferred to a new special master? I think that you would have to show some misconduct on the part of the special master and I don't think that this record... Well, we've decided that we have the authority in cases coming from the district court to order cases on remand to be heard by another district court judge. There's an established standard for that. Is there any reason that we can't apply that same established standard to ordering that the case be heard by a different special master? Your Honor, I'm frankly not familiar with that standard. But I would argue that absent some showing of misconduct by the special master in this case, it would be inappropriate for this court to transfer the case solely on the basis that you disagree with the special master's findings. Okay. Thank you, Mr. Johnson. Mr. Popp, you have about four minutes here.  On Appendix 526, that's where Dr. Lake makes the probable atypical Guillain-Barre finding based on a Babinski test. And unlike my worthy opponent, I don't believe because they found transverse myelitis that they ever said it wasn't GBS. As a matter of fact, they were treating Mr. Cotreras for GBS. In answer to the question that you raised, which is a very interesting one, can this court order that the case be transferred to another special master because of the taint of Dr. Slatke? Yes, you have the authority, of course, to do that if you think that the special master was tainted, not through the special master's own fault, but by the testimony of Dr. Slatke. And I think that that, in fact, is what should happen in this case. I think that would be perfectly appropriate. And finally, Dr. Garrett, who did say it was transverse myelitis, said that his differential diagnosis was GBS. So this is not one of those cases where it falls into it's either one disease or the other. These two diseases are very much co-existent in 27 cases as found by Dr. Steinman and by the literature. So thank you very much. Okay, thank you, Mr. Popp. Thank both counsel. The case is submitted. That concludes our session this morning. All rise.